Counsel, you may proceed. Thank you. Good morning, Your Honors. May it please the Court. My name is Mike Glenn, and I represent Michael Rex Raging Bear Mooney and his church, the Native American Church of Hawaii. For Your Honors information, it's pronounced Ah-kluh-vah. However, he's since legally changed the name. We've eliminated all references to Ah-kluh-vah. It is now simply the Native American Church of Hawaii. Much easier on the tongue. Thank you very much for that. No problem. Your Honors, the early European settlers to North America, following the lead of the Spanish and the French settlers before them, decidedly demonized the indigenous natives in an attempt to excuse their own behaviors. They even viewed the mass deaths of the Native Americans as a sign of divine disfavor. According to John Winthrop, God was killing Indians and their supporters to ensure our title to this place. And as the instruments of providence divinely appointed to claim the new world from its godless peoples, the colonists felt it was their duty to destroy the godless savages. So religious freedom is the ultimate right we enjoy as Americans. However, it's only for the right sort of Americans, if you look at that viewpoint. Religious freedoms these days seems to be primarily about anti-gay Christians asking for the right to discriminate or anti-pro-choice Christians asking for the right not to have to provide health insurance, care for contraception. Now America's highest court, the Supreme Court, has never formally defined what actually God. Attempting to define religion in general and for the purposes of free exercise is notoriously difficult, if not impossible. Few tasks can confront this court that require more circumspection. However... I appreciate your argument but it would help me if we could get to the facts of this case and one of the client's articulation as to what his religious beliefs consist of are the district court found almost unintelligible, difficult to quantify. And my question specifically is what substances are we talking about here? I'm looking at a half a dozen different hallucinogens, which includes cannabis. Is he asking for or claiming that it is a part of his sincerely held beliefs that he can use any mind-altering substance that he wants in order to get closer to God? Is that what this case is about? Quick answer, no. Okay. But I appreciate your use of the word cannabis instead of marijuana, which we feel is derogatory. All right, a substance containing THC. Hallucinogen is also a hallucinogen, which means it's a God within. It enables the person to get closer to their Creator. It does alter the senses chemically. Right, but there's a something called a non-drug use. Okay, how many drugs are we talking about? I just want to get a handle here on what part of the Controlled Substances Act I'm supposed to be looking at. Simply two, peyote, cannabis. That's all. No others. Okay. Now, as I understand it, the fundamental substance is peyote, but cannabis is simply an alternative? Sort of, Your Honor. Cannabis is the grandfather medicine. I mean, peyote is the grandfather medicine. It's what's all the way back to pre-contact indigenous cultures used. However, even then, in times of peyote shortage, or just because they didn't want to use peyote all the time, cannabis was a substitute. Is there anything in the record that establishes peyote was in shortage here, in this case, in this record? No, Your Honor. We're arguing in addition to peyote, not just in substitution of, they can use cannabis. Some ceremonies that the Church has does not involve peyote at all. Most ceremonies involve only cannabis, but the ceremonies for the peyote and the cannabis. Does the record show that in those ceremonies that only cannabis is used? No, Your Honor. In fact, the record makes it clear. We feel it is one of the most disingenuous arguments of all time for the United States to say, yes, we understand this Native American Church can use a Schedule I controlled substance that is peyote, based on statute, based on tradition, based on what we think they can smoke a joint. We can't have them possessing any cannabis whatsoever. I'm asking a specific question. In the record, is there any evidence at all that specific religious ceremonies can only be performed with cannabis? No. Okay. I mean, the reasoning being the Native American Church is sui generis. It is unique. It cannot be compared to other religions, and that's exactly what the lower court did. I thought it claimed to be an offshoot of the Native American Church. No. This is the big misunderstanding. If you read the briefs thoroughly, you'll see. Limited understanding creates problems, and here the lower court thought, because there was this thing called the Native American Church of North America, that they considered that to be like the But that's not the case. Apparently the district court was not the only one that was under the misimpression. We've got an amicus brief that we just granted participation in the case from the Native American Church of North America saying, we don't know who this guy is, but he's not with us. Right, and he shouldn't be with them. You do not have to be a member of a group of churches to have a peyotism religion. Remember, they don't practice Native American Church. They practice peyotism, and peyotism is its own religion. Any Native American that uses peyote, whether they're part of a church or not, is provided protection under the law. Under any circumstances? Under any circumstances. Okay, so if you want to go out on the beach around the campfire and use peyote, that's the exercise of time, anywhere, whether it's being used for ceremonial purposes or not, is part of the religion? Zero restrictions. However, churches don't do that. They don't go on the subway and have a sweat lodge. They have specific places. That's why I asked you the question about what the record shows, because the district court was struggling with trying to understand sort of what this, whether this was even a The quote that says a church has to accomplish more than getting high. Wrong. Just ask the UDV USA Church, where the United States Supreme Court unanimously agreed they could import and distribute a Schedule I controlled substance just because it gets them high. We made it real clear in our complaint. This church exists to espouse the virtues of and consume peyote and cannabis, naturally occurring entheogens. They are an earth-based healing religion. They don't have a Bible. They don't have a pope. They don't have a code of, I mean, a dogma. They don't have a liturgy to follow. They do literally sit around in a teepee and get high, but it's non-drug. Go ahead. In this particular case, though, you indicated that there are no religious ceremonies that expressly require the use of cannabis and not peyote or something else, right? When you say require, that would be assuming there's a list you can look at to say here's what's required and what's not. No such list exists. It's all in the medicine man's control. Okay, but the question I would then have is, in connection with this case, the government contends that you can get peyote. You can perform all of the rites and ceremonies that you wish with no problem. There's no evidence that you couldn't get peyote. Do you agree with that? Correct. Okay. If you get peyote and you don't need cannabis to perform the ceremony, then how in are you damaged? Well, Your Honor, cannabis is their sacrament. It is used. Well, so is peyote, isn't it? Right. But cannabis, if the government were to say you can't have peyote, that's already been decided. That would be an unconstitutional violation of their freedom of religion. After the Smith decision, the RFRA Act was created just for this purpose, so that churches can use entheogens in a non-drug way. Now, that's the most important word you're going to hear today, non-drug use. I doubt he's going to even address it, because non-drug use is what we're talking about. Yes, it's a controlled substance. Yes, it's prohibited for everyone else. But Native Americans get special treatment. In the UDV-USAO-Centro case, everyone was saying you can't compare yourself to Native Americans. Native Americans are special. They get special treatment. I haven't heard that at all from the government in this case, where the Native Americans are actually standing up and saying, give us that special treatment. Stop harassing us for our sacrament. And, Your Honor, you mentioned earlier in the previous case, is this a gotcha game? No. What you do if you really want protection from your religious rights is file a civil suit before you get arrested. That's what you're doing. Exactly. But what happened was his cannabis got seized. The lower court said, well, seizure's not enforcement, and, of course, we had to appeal. And unanimously, the Ninth Circuit said, of course, seizing and destroying their sacrament is enforcement. Go back and settle this. We have yet, Your Honor, after six years to have an evidentiary hearing in this case. Justice delayed is certainly justice denied. However, in this situation, Your Honor, I want to give you a little anecdote about how this can be a religion outside of the way normal people think. A member of the church was asked, you know, does your religion have a Bible? And she said, you know, if you take the Christian Bible and you put it out in the wind and the rain, it will be deteriorated and it will be left with nothing. Our Bible is the wind and the rain. So at some point, you have to think outside of the box. Now, the analysis of the Alvarado cases and Malnick and Africa are inapplicable to the discussion here. As I mentioned in my brief, it's only when courts are faced with forms of the press or forms of religion unknown in prior decisional law that they look to other things as guidance. The court will first discuss the question of whether move, and that was in the Africa case, can be classified as religion within the purview of the First Amendment. Before undertaking this discussion, however, it must be noted that no case has been cited by the parties nor revealed by the court's research in which the present issue has been decided. So then they use the Malnick's definitional approach. But this is the Native American church. You can get a tombstone at Arlington with the emblem on it. How is that not a religion? So what the court said was, well, we don't like... Didn't we just hear you say, Mr. Glenn, a few minutes ago that you are not affiliated in any way with the Native American church? No. Whose brief has been filed in this case? Thoroughly did not hear that. I said the Native American church of North America, and I also said that that's not a church. You cannot affiliate with it. You can become a member if you donate 700 peyote buttons a year, which my clients definitely don't want to do. But it's not a church. The peyote way is a church. It's not a member of the Native American church of North America's coalition. So no, Your Honor, you did not hear me say that. What I'm saying is peyotism is the religion at issue here, not the label, not whether it's a church, not whether anyone agrees or disagrees with the tenets. But we have a lower... If peyotism is the religion, what role then would cannabis have with respect to that religion? There's a non sequitur somewhere. Wrong. If you read my brief, you'll see the ethnographers and the historians have said traditionally cannabis, also known as Rosa Maria or Santa Maria, has also been used by these Native Americans in their religious ceremonies. So the American Indian Religious Freedom Act that says protect and preserve these Native Americans' rights to possess and consume these sacred substances is being totally ignored by the government. They feel it's not a religion. You might not even be Native American, but there's no evidence anywhere in the record that supports their position other than the lower court saying you can't just get high and call it a religion. But the government and the... What? That you can't just get high and call it a religion. Obviously the THC ministry and the lower court that said that's a legitimate religion disagrees with that. Rastafarianism disagrees with that. Ethiopian Zion Coptic Church disagrees with that. Under your thinking, anybody can use any form of controlled substance and say I'm doing this for religious purposes and that's a complete defense. Incorrect, Your Honor. I didn't say that at all. Well, that's why I asked you if you agreed with the general proposition. Then we'll get to the specifics of whether in this case we're dealing with a religion. Let's pretend I had the church of the dirty needle and all we wanted to do was shoot up heroin. And I can prove that some religion somewhere did it. But I'm not Native American, so there's no duty to honor my beliefs. But then you get into the compelling interest. Of course... Before we get to the compelling interest, let's first determine whether we have a religion here. All right. What is it that the court is supposed to look to to determine that? The district court tried and kind of threw up her hands and said, I don't know what I've got here, but it doesn't look like a religion. You want to ask yourself, do you hold yourself out as religion? Like in the New Age movement, in the Alvarado case, where they're trying to say that Quetzalcoatl was a religious figure of Aztec mythos or Mayan mythos. And the court said, you know, you don't have members. The New Age movement is a thing, but it's not a religion. Well, here, yes, they call themselves a church. Yes, they've registered as an ecclesial corporation. He grew up practicing this religion. It's the religion of his parents. At some point, what else do you need to do besides say, I'm a Native American religious practitioner who's done it most of my life, as with my parents, and I have a group of people, and we all do this, and we meet in ceremony, and we have ritual, and we consume sacraments that have been used for thousands of years by these same religious people. The problem we have is the Native American church isn't a religion. It's a way of life. When the European settlers found them, they didn't know what to do or think. They didn't know what to call them. And the Native Americans didn't have a name for their religion. It was just part of their lives. Only after it was incorporated to prevent oppression, to prevent persecution, did they become the old peyote complex or the peyote cult. Counsel, did the trial court make distinct findings between the church and Mr. Mooney? No, none whatsoever. There was no distinction in the lower courts or the records monitor. And are you making any contention that Mr. Mooney perhaps should be considered to be sincere, notwithstanding the findings with respect to the court, to the church, or is it all wrapped up in one? I don't think the word sincere has any place in this courtroom. It's not any judge's place to say whether a person's beliefs are sincerely held. It's in the act, and the Supreme Court tells us we do have to make that determination. As difficult as that job may be. The definition that you have to determine, Your Honor, is clearly defined. RFRA, the only definitions that apply in this matter are one's right to exercise their religion. Under RFRA, an Indian religion as defined by 42 U.S.C. 199-6AC3, the United States has a clear definition. Any religion practiced by Indians, the origin and interpretation of which is from within a traditional Indian culture or community. That's the issue. He's a Native American. He's practiced in a traditional religious ceremony. Meets the definition on all counts. Sincerity has nothing to do with it. Secondly, RFRA's definition clearly includes any exercise of religion, whether or not compelled by or even central to a system of religious belief. Nothing in there says anything about sincerity, but that issue was never brought up. No one questioned whether he's sincere. He's suing to get his cannabis back. He can't get much more sincere than that. There's never been an evidentiary hearing or trial in this matter. Sincerity can come up then if it's needed, but his pleadings are very clear that this is historical. His rights need to be protected. The government is bound to protect those rights, and they've utterly failed. The government now, as we stand here, is allowing everyone in the homes. I know you've practiced in Oregon and Colorado and California. In those states, anyone can use cannabis for social reasons, medicinal reasons, recreational reasons, or just sitting on the beach getting high. And the government doesn't want to stop them, can't stop them, has realized we can't do anything. But more than that, recently the government has notified Native Americans on tribal land, feel free to use and grow and sell cannabis. In the same breath, they're telling our clients, we'll put you in jail if you dare use cannabis during one of your ceremonies. That doesn't jive. They have zero compelling interest in this matter, let alone less restrictive means. If they were worried about his use of cannabis, they could treat it like his use of peyote and make sure he gets it from a registered dealer, but there are no registered cannabis dealers other than the University of Mississippi, or put any restrictions on it the government wants. Our clients will abide. We just want to be kept out of jail. They just want to be able to say, here's our church and here's what we do, without fear of being put in jail for five years and denied bond because you're public enemy number one for espousing the virtues of cannabis. They live in fear. Our country is greater than that. Thank you. Thank you, counsel. We'll hear from the government. Good morning. May it please the court, I'm Lowell Sturgill from the Department of Justice representing the government. This case has been pending since 2009. Plaintiffs have had ample opportunity to submit evidence to prove that their marijuana use is religious as opposed to something that's generically spiritual or purely personal, and that's the test under this Supreme Court's cases. Judge Mulway looked carefully at the evidence, and she just made a simple determination that she couldn't find anything admissible that made that distinction, and that's all really you need to do in terms of a review in court is to ask the same question. Look at the record they made over that six years. Look for something that explains that their marijuana use, again, is religious as opposed to purely personal or generically spiritual, and I would suggest to you there is nothing in the record. They only submitted, in terms of admissible evidence, an affidavit from Plaintiff Mooney, which swore to the allegations of the complaint. But, again, Judge Mulway looked at the allegations of the complaint. She found them bare and mostly inscrutable, and that they did not satisfy this evidentiary burden, which this court in the Navajo Nation case said that a plaintiff under RIP were bares. Plaintiffs also submitted a number of articles and excerpts from books and magazine articles. Judge Mulway looked at those as well. She found that they're inadmissible hearsay, and the plaintiffs have not objected to that on appeal, so they've conceded that those materials are inadmissible because they're hearsay. But then Judge Mulway went beyond that. She actually looked at them and said, well, they're very interesting historically, but they don't tell you anything about whether this church, so they say, or this plaintiff is actually using marijuana for a religious purpose. Again, they're not probative. If I might ask, on the first part of this, the district court seemed to be making her determination based upon her view of whether Mr. Mooney was sincere and all these various practices. But this is a motion for summary judgment here we're talking about, right? That's correct. And you've got to construe the evidence in the light most favorable to the nonmoving party. In this case, isn't that something that a trier of fact ought to determine as opposed to the district judge? Well, Your Honor, respectfully, Judge Mulway made it very clear she was not basing her order on any kind of a finding about the sincerity of these plaintiffs. What did she base it on then? The absence of evidence that what they said. I understand it. There was an affidavit that was put in by the plaintiffs in which he stated a variety of things about his beliefs and what he did and all those sorts of things. Now, whether she believes it, that's a different matter. But at this stage, I don't believe the government put anything to counter that in the sense of evidence. That's really something for a trier of fact to determine, is it not? Well, no, Your Honor. First of all, again, she did not base her ruling on anything to do with sincerity. What she said was these plaintiffs maybe they're assuming they're sincere, they believe that what they're doing is religious, and they have said various things about how this is a god to them, but they haven't satisfied the test that this court has set out. The test she cited, though, was for the Establishment Clause, not for the Freedom of Exercise Clause. Talk about Alvarado. The Zimmerman case applies the same kind of analysis. You heard about it in the first argument. There are four things under a RFRA case that a plaintiff has to allege to make a private faith case. First, they have to articulate the nature of their religious beliefs, and that's very important because the plaintiffs failed on that here. They didn't articulate in any kind of comprehensible manner what their religious beliefs are. How extensive does it have to be? I'm just quoting from this. He said that cannabis helps him, I'm quoting, regain his relationship with the Creator and offers a way to have a relationship with God as he understands it. Now, whether you believe it or not isn't really the question, is it? At this stage, if it's not refuted, don't you have to let it go to a trier of fact on that point? No, because what does that mean? And this is where Judge Malaway couldn't go along. If basically anybody can avoid the application of the Controlled Substances Act by saying, my use of cocaine is God, right, Judge Malaway couldn't agree with that. It's reading RFRA improperly. And all they have to do is they have to explain what does that mean. And that's what they failed to do here. There are two parts of this, and now you've got the substantial burden. And, of course, that's a separate issue. And they have to win on both parts in order to have a prima facie case. But on the first part, though, I'm troubled. It seems to me she allowed her reading, her belief as to the credibility of Mr. Mooney to control this decision and that it was a disputed fact, a material disputed fact, which was not refuted. And if I'm right about that, then at least as to that portion of this, that needed to go to a trier of fact. I can't be any clearer. She said nothing about she did not question the credibility of Mr. Mooney anywhere. In fact, if you look at the end of her opinion, she went out of her way to say she is not challenging the plaintiff's sincerity. She said it may be she agrees that it may be in Mr. Mooney's mind that he believes that he is exercising religion. What she said was he hadn't done anything in terms of admissible evidence to explain what that is. Can I just go into what the test is? Because this is very important. Wouldn't the test be more liberal, so to speak, with respect to the individual than it would be with respect to the church? And that's why I asked Mr. Glenn the question of whether there were separate findings made with respect to the church qualifying versus Mr. Mooney qualifying. I don't believe so, Your Honor. I've found no case that has ever made that kind of a distinction. And, again, the test is the test. Whether you're an individual or whether you're an organization, you have to satisfy the same standards. That's the Hobby Lobby and Holt versus Hobbs are the two most recent Supreme Courts. They apply the same analysis. But, again, the test is this. There's a three-part test. Is something a belief system as opposed to an isolated practice, right, because most beliefs, religions involve a belief system? Well, here all you have. But that can be an individual, can it not? It doesn't have to be an, in quotes, organized religion. So, as I look at this, the real issue here is whether Mr. Mooney himself, without regard to anybody else, meets this test. And if you have the test there, based upon what he said in his affidavit, I'm questioning how that material fact can be decided by the district judge in a summary judgment. Because he hasn't alleged, he hasn't provided any evidence that he has a belief system. He has. Wait a minute. I just read you something that suggests that he does. Helps him to become closer to God, regain his relationship. Well, again, this court has held that just because a person thinks that something makes them sort of generally, generically, spiritually feel better, that's not enough to be a religion. That's straight out of the cases. But, you know, you've heard opposing counsel enthusiastically, shall I say, describe the unique situation involving American Indians and how far this goes back and so on. Don't we have to factor that in? It's in the record, is it not? No, it's not. Any part of that's in the record? No. All these articles, he's relying on the articles that he's submitted to the district court, which are all hearsay, which the district court said were hearsay. He's not challenged that. That evidence is not before you. Okay. And so you've got none of that. And all it does really is talk about mostly peyote use, and he's got huge problems there. First of all, the district court said, okay, well, you say you're a peyoteist. Where's your evidence that you actually practice peyotism, as opposed to just sort of claiming it? And he doesn't have any. There's nothing. And you have this amicus brief now before you this morning, which at pages 12 and 13, explain what peyotism is and the kinds of practices, the controlled practices and ceremonies that they engage in. It's not just like they, you know, use peyote and that's it, which is what he's claiming, right? The only evidence in the record is they smoke marijuana. That makes them feel, you know, generically spiritual, and that's enough, and it can't be. And the second problem is that they're really peyotists. As you discussed, they haven't alleged that, and they've conceded that peyote is available to them. So there's no substantial burden involved here, right, because if they can get peyote, they say that's sufficient. That, of course, is the second problem we're talking about in the private financial case, right? And you can affirm on either ground. And the district court made an alternative finding and said, okay, well, let's just take them at their word. Let's just assume they are peyotists, like they say. Well, then they can't prove a substantial burden because they haven't said that peyote is not available to them. So they lose on that ground, too. They said a number of things this morning I think are worth going into. None of it is true. First, they said they've never had an evidentiary hearing. Well, what happened was they had six years to come up with evidence. They didn't submit anything other than this affidavit and these inadmissible articles. We took their depositions, you know, in an attempt to figure out what's going on. They were completely inscrutable. So then the district judge set a hearing, a summary judgment hearing. And she sent out inclinations. And she said, look, this is what I'm worried about. Please, and this discussion we're having this morning, please outline for me what evidence there is that shows that you're religious as opposed to generically spiritual or, you know, just smoking marijuana. And they came up with nothing. So they had their opportunity to go before a judge with evidence. They didn't. The second thing, they say that their sincerity, again, is enough. Well, the district judge didn't rely and make any finding about sincerity. And the Alvarado case says that sincerity is not enough to prove that something is religious. Otherwise, anybody, you know, could get right past that key part of the statute. At one point, he said his church is actually not a religion. If I heard him right, he said it's not a religion, it's a way of life. I thought that was an interesting concession. I'm sure he probably didn't mean it. But that's what he said. Then he said judges can't even address sincerity, can't judge it because it's beyond your function. Well, you can, but again, it's not part of the case. And then finally, he pointed to some statutory definitions under RFRA and under the American Indian statutes. The key thing about those definitions is they're definitions of the term exercise of religion. They're not definitions of the term religion, of exercise of religion. And what he's doing is trying to tease out of that some kind of broad understanding of the meaning of religion. But that doesn't work because he's begging the question. The statute uses the term religion and then doesn't define it. And that's why Hobby Lobby is clearly distinguishable from this case because Hobby Lobby, the Supreme Court addressed two questions. First, was there an exercise of religion in that case? And second, was there a substantial burden? Nobody challenged or argued that the Supreme Court made no finding about whether you had something that was religious. It was assumed. That part of the case was assumed. So Hobby Lobby has no bearing on this case whatsoever because, again, the fundamental question is what they're doing religious as opposed to purely secular or purely personal. The Zimmerman case, we believe, is controlling here and the Alvarado case, which they've been unable to distinguish. And then the final thing is. You think Alvarado is controlling even though it's an establishment class case? I do, Your Honor, because the term religion has to mean the same thing under all these statutes. Nobody has ever suggested, no court has ever held that I'm aware of that, for example, the First Amendment says government may not substantially burden the free exercise of religion or engage in a step, but it only uses the term once, the term religion once in the Constitution. So it would be very strange to think that where the Constitution uses the term once, there could be a different meaning for the two clauses. And RIFRA, of course, and RELU for the land use statute, they all look to the Constitution for what the meaning of these terms are because that's what the statute was supposed to do. It was supposed to be restoring rights that Congress believed that the Supreme Court, in the Smith case, had wrongly taken away from people. So again. Let me ask you this. Opposing counsel mentioned the Smith case, which, of course, did involve peyote, and I believe some American Indians in a jail. That provoked a reaction from Congress. That's why we have RIFRA. What's left of the Smith case from your perspective? Well, Smith is still controlling with respect to a free exercise claim, which the plaintiffs have not made here. So if they were relying on the free exercise clause under Smith, all the government has to prove is that it is engaged in neutral activity. It's not singling out religion for disproportionate treatment. So, again, the plaintiffs aren't relying on the free exercise clause here, so Smith is not relevant. They are relying on RIFRA, which was the statute that Congress passed to restore the compelling interest, least restrictive means inquiry. They were attacking, were they not, the idea that any neutrally applied law applied across the board, right? Right. Exactly. So you have a RIFRA case and not an exercise case. The final thing is we have raised that if the court doesn't agree with the district court's findings about the religion element and the substantial burden element, you can still affirm the judgment below because the government has a compelling interest and that denying this injunction is the least restrictive means. You have that on brief. I think you've already talked about it with Mr. Pelletier in a similar context, so I won't belabor it. But I will note that if you look at their complaint, what the plaintiffs request in this case in terms of relief is the right not only to use but to distribute marijuana. They don't put any limitations on it. And they come in here this morning and they say, well, we're willing to abide by any reasonable limitations that the government might want to put on it. But they don't suggest what any of those are. And if you look at the Holt v. Hobbs case, this is important. This is the Holt v. Hobbs Supreme Court case from the last term. It said that the government, to satisfy the compelling interest test, doesn't have to go out and shoot down and doesn't itself come up with and shoot down potential alternatives. We don't know what people's religion requires. A plaintiff in a RFRA case has the burden to show, okay, what would satisfy us? And then we can address that, right, because then we know, and, well, we know what we can do and what we can't do, but we don't know what would make them happy. So they have failed again to satisfy their burden to come up with specific least restrictive alternatives that we could analyze and look at. For those reasons, we would ask the court respectfully to affirm the judgment below. And, again, I think you don't have to do anything other than just approve what Judge Mulway did, and that is to look at the evidence that's in the record as opposed to what he said this morning or what is not in the record and see if that satisfies the test that this court has set out. If there are no further questions. No further questions. Thank you, counsel. Mr. Glenn, you have less than a minute of reserve time. Thank you, Your Honor. Your Honor, I'd just like to leave you with a few quotes and then a little summary. Mark Twain once said, The easy confidence which I know another man's religion is folly teaches me to suspect that my own is also. And Richard Dawkins has once said, Religion is about turning untested belief into unshakable truth through the power of institutions and the passage of time. Now, unless the errors committed by the lower court are reversed, we're going to be left with a society where a church consuming a traditional sacrament is not deemed to be an exercise of religion, but a corporation refusing to provide health insurance is. Really? Thank you very much, counsel. The case just argued will be submitted for decision and the court will adjourn.
judges: O'scannlain, Tallman, Smith